NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
FREDERICK HEDGESPETH,            :
                                 :
    Plaintiff,                   :    Civil No. 06-3883 (AET)
                                 :
    v.                           :    **MEMORANDUM & ORDER**
                                 :
ROY HENDRICKS, et al.,           :
                                 :
    Defendants.                  :
_____:

THOMPSON, U.S.D.J.

    This matter is before the Court upon Defendants'[1] Motion to Dismiss Plaintiff's Complaint Pursuant To Fed. R. Civ. P. 12(b)(6) Or, In the Alternative, For Summary Judgment In Lieu of An Answer Pursuant to Fed. R. Civ. P. 56. The Court has decided this Motion based upon the submissions of the parties and without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, Defendants' Motion is granted in part and denied in part.

BACKGROUND

    Plaintiff Frederick Hedgespeth, an inmate at the New Jersey State Prison ("NJSP"), brings this *pro se* Complaint pursuant to 42 U.S.C. § 1983, alleging that various individuals at NJSP and the New Jersey Department of Corrections ("DOC") violated his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments. The following facts are taken from Plaintiff's Complaint, and do not constitute the findings of the Court.

---

[1] Plaintiff's Complaint names Roy Hendricks, Richard Runcie, Julian Washington, Steve Wilson, Richard Makarski, Michelle Ricci, Brenda O'Gara, and New Jersey Department of Corrections Officers John Doe 1, John Doe 3, John Doe 4, and Dave Doe 2. This Motion is filed on behalf of Hendricks, Washington, Wilson, Makarski, Ricci, and O'Gara.

Plaintiff alleges that, on the morning of July 25, 2004, he and other inmates in his housing unit were subject to a strip search. (Compl. ¶¶ 21- 24.) The unit was then placed on a "lockdown" status for four days, where none of the inmates were permitted to leave their cells except in emergencies. (Compl. ¶¶ 37-38.) During the afternoon of July 25, Plaintiff complained about poor air ventilation in his cell to Defendants Hendricks and Runcie after officers closed the ports used to deliver food to inmates in their cells. (Compl. ¶¶ 41, 43-47.) A little more than one hour later, Plaintiff alleges that he was ordered out of his cell and strip searched by Defendant Wilson in the middle of the dining area, after Wilson allegedly told another DOC officer that, "I don't know what's going on, I was told to lock him up because he thinks he's a tough guy." (Compl. ¶¶ 56-59.) Plaintiff was subject to five additional strip searches over the next three hours. (Compl. ¶¶ 69-70, 80-81, 95, 101, 114, 124, 131.)

Plaintiff was advised around the time of his final strip search on July 25 that he was being transferred to the 1 Left detention unit of NJSP to await a disciplinary hearing. (Compl. ¶ 124.) Plaintiff alleges that a prehearing detention report authorizing his confinement in 1 Left was not submitted to Defendant Makarski, the disciplinary hearing officer, as prison officials were required to do by N.J. Admin. Code § 10A:4-10.1(d). (Compl. ¶ 147-50.) During his detention in 1 Left, Plaintiff alleges, *inter alia*, that his contact with other humans was "severely limited" (Compl. ¶ 382), his cell lacked air conditioning and access to sunlight (Compl. ¶ 384-85), he was denied recreation (Compl. ¶ 387-88), he was permitted one shower every three days (Compl. ¶ 401), he was allowed only one sheet and blanket (Compl. ¶¶ 402-03), and he was denied basic hygiene supplies such as deodorant and toothpaste. (Compl. ¶¶ 407-11).

Plaintiff received written notice that he was being charged with attempted escape on July

26.[2] (Compl. ¶ 181.) Plaintiff was later strip searched three times that day. (Compl. ¶¶ 189, 198, 215.) Special Investigations Division DOC Officer Thomas photographed Plaintiff during one of these strip searches. (Pl. Compl. ¶ 198.) Plaintiff alleges that Officer Thomas then telephoned a colleague and said, "I don't see any marks on him, he's clean, Dave, what do you want me to do?" (Compl. ¶ 203.)

Plaintiff appeared at a prison disciplinary hearing on July 28. (Compl. ¶ 285.) He was strip searched prior to his hearing. (Compl. ¶ 288.) After Defendant Makarski reviewed the factual basis for the disciplinary charge with Plaintiff, he adjourned the hearing to review the evidence and to allow an investigation of Plaintiff to be completed. (Compl. ¶¶ 302, 309.) Plaintiff alleges that he never had the chance to question any witnesses about the investigation. (Compl. ¶ 312.) Plaintiff's disciplinary hearing was postponed at least once more. (Compl. ¶¶ 324, 344.) Plaintiff alleges a number of infirmities with the disciplinary process, noting that the photos taken of him during his strip search and Officer Thomas's statements following that search were not presented as evidence at his hearing. (Compl. ¶¶ 325-27.) In addition, Plaintiff was not afforded an opportunity to confront witnesses. (Compl. ¶ 332.) Plaintiff was found not guilty of the attempted escape charge on August 9, 2004. (Compl. ¶ 354.) Plaintiff alleges that Defendant Makarski's adjudication report does not indicate that the investigation of Plaintiff uncovered any additional evidence of his involvement in the attempted escape that warranted his continued confinement in 1 Left. (Compl. ¶ 346.)

Plaintiff was released from administrative segregation on August 11, 2004. (Compl. ¶

---

[2] While Plaintiff's chronology of events is not entirely straightforward, the Court understands that evidence of activity to dig a tunnel allegedly had been discovered in a closet near Plaintiff's cell. (Compl. ¶¶ 18-19, 171-72.)

355.) He alleges that his eighteen days in administrative segregation contravened New Jersey regulations requiring housing assignments to take into account the needs and interests of inmates. (Compl. ¶ 356.) Plaintiff further alleges that he is entitled to back pay and work credits for the time he spent in administrative segregation and could not work pending the outcome of his disciplinary hearing.

The Court received this Complaint on August 17, 2006. After an initial screening, the Court granted Plaintiff leave to proceed *in forma pauperis*. Defendants' Motion to dismiss followed.

## STANDARD OF REVIEW

Defendants first ask this Court to dismiss the Complaint pursuant to Fed R. Civ. P. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), all allegations in the Complaint must be accepted as true and viewed in the light most favorable to the plaintiff. See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a plaintiff's "bald assertions" or "legal conclusions." Id. A court may dismiss a complaint if it appears that a plaintiff has not pled "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).

Alternatively, Defendants ask the Court to grant them summary judgment pursuant to Fed. R. Civ. P. 56. Defendants have submitted with their Motion a Declaration by Frank Bruno, a DOC Program Development Specialist I at NJSP, that outlines the grievance procedures, as excerpted from the Inmate Handbook, that an inmate must follow before seeking relief in the courts. Plaintiff's Opposition includes an appendix comprised of, among other things, copies of Inmate Request forms that he filed in connection with the events that form the basis of his

Complaint. The grievance procedures outlined in the Inmate Handbook and Plaintiff's Inmate Request forms are both "integral to and explicitly relied upon" in Plaintiff's Complaint. See In re Rockefeller Ctr. Props., Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999) (emphasis and citations omitted). Accordingly, this Court will consider Defendants' Motion as one for dismissal under Fed. R. Civ. P. 12(b)(6) and declines to convert it into one for summary judgment. See id. (permitting a court to consider material "integral to or explicitly relied upon in the complaint" without converting a motion to dismiss into a motion for summary judgment).

## SECTION 1983 LIABILITY

In order to state a claim under § 1983, a plaintiff must allege a violation of a constitutional or federal right that was committed or caused by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48-49 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Plaintiff's Complaint lists thirteen causes of action, and several of the Counts are comprised of multiple claims. The Court, construing this Complaint liberally because Plaintiff is *pro se*, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), finds that Plaintiff has alleged the following claims: (1) that he was subject to strip searches constituting a violation of his constitutional and statutory rights to free exercise of religion, violation of privacy, cruel and unusual punishment, and denial of due process; (2) retaliation; (3) denial of disciplinary due process;[3] (4) denial of due process with respect to his administrative segregation; (5) denial of

---

[3] Plaintiff's claims that are premised on violations of the Fifth Amendment are dismissed because the Defendants were, at all relevant times, state officials. See Nguyen v. United States Catholic Conference, 719 F.2d 52, 54 (3d Cir. 1983) (holding that the Fifth Amendment circumscribes only federal government actors).

due process in his housing assignment; (6) denial of due process with respect to the filing of false disciplinary charges; (7) restoration of back pay; and (8) restoration of work credits.

### DEFENDANTS' BASES FOR DISMISSAL

Defendants argue that the Complaint should be dismissed on several grounds: (1) that the Complaint is barred by the statute of limitations; (2) that the Eleventh Amendment bars Plaintiff from suing state officials; (3) that state officials acting in their official capacities are not "persons" within the meaning of § 1983; and (4) that Plaintiff failed to exhaust his administrative remedies with respect to his claims. The Court considers each of these defenses in turn.

A.   Statute of Limitations

The Court finds that Plaintiff receives the benefit of the prison mailbox rule, which deems the date that a prisoner delivers his legal materials for filing to prison officials to constitute the date of filing. See Longenette v. Krusing, 322 F.3d 758, 763-65 (3d Cir. 2003) (applying the prison mailbox rule to *pro se* prisoners in the absence of a statutory scheme governing the filing of actions). Here, Plaintiff delivered his Complaint to prison authorities on July 21, 2006. (See Pl.'s Opp'n. App. 3a (NJSP Postage Remit for Plaintiff's Complaint).) This Court applies the statute of limitations for personal injury actions of the state where the cause of action has accrued to § 1983 actions. See Wilson v. Garcia, 471 U.S. 261, 279-80 (1985) (holding that state statute of limitations governing personal injury actions apply to § 1983 actions); see also Cito v. Bridgewater Township Police Dept., 892 F.2d 23, 25 (3d Cir. 1989) (applying New Jersey's statute of limitations for personal injury actions to § 1983 actions). New Jersey's statute of limitations governing personal injury actions is two years. See N.J. Stat. Ann. § 2A:14-2. The events of which Plaintiff complains took place between July 25, 2004 and August 11, 2004.

(Compl. ¶ 457.)  Therefore, Plaintiff's Complaint was timely filed.

B.      Eleventh Amendment

Defendants argue that the Complaint should be dismissed pursuant to the Eleventh Amendment to the extent that Plaintiff pleads claims against them in their official capacities. While it is true that the Eleventh Amendment bars suits for money damages against state officials acting in their official capacities, it does not proscribe actions for injunctive relief against such defendants.  See Sarteschi v. Burlein, 508 F.2d 110, 113 (3d Cir. 1975).  In this action, Plaintiff seeks relief including damages, injunctive, and declaratory relief.  Accordingly, any claims for damages against Defendants acting in their official capacities are dismissed.

C.      "Persons" Under Section 1983

Similarly, the bar on suits under § 1983 against state officials in their official capacities applies only to those seeking money damages.  See Will v. Michigan Dep't. of State Police, 491 U.S. 58, 71 (1989).  A § 1983 plaintiff may sue state actors in their official capacities for injunctive relief, see Will, 491 U.S. at 71 n.10, or damages against state officials acting in their personal capacity.  See Hafer v. Melo, 502 U.S. 21, 31 (1991).  As noted above, Plaintiff's claims for damages against the Defendants acting in their official capacities will be dismissed.

D.      Failure to Exhaust Administrative Remedies

Defendants argue that the Complaint must be dismissed because Plaintiff failed to exhaust all administrative remedies prior to filing the instant action, as required by the Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e(a).  The PLRA provides that "[n]o action shall be brought with respect to prison conditions [under section 1983 of this title], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

NJSP's Inmate Handbook, promulgated under N.J. Admin. Code 10A:8-1.1 to -3.6, sets forth a multi-step process for inmates to seek relief for grievances. Inmates must file (1) an Inmate Request Form, intended "to provide a procedure for requesting information from appropriate staff persons and addressing, **on a first step basis** . . . concerns or problems which may be experienced on a day-to-day basis" (Bruno Decl., Ex. A at 155) (emphasis in original)); (2) an Interview Request Form, "designed to permit inmates to request in-person interviews with staff persons to help resolve questions, concerns or problems which cannot be handled through other facets of the Request/Remedy process" (Bruno Decl., Ex. A at 158); (3) an Administrative Remedy Form,[4] which "should be considered the <u>final step</u> in resolving grievances, problems or concerns within the institution before applying to the courts" (Bruno Decl., Ex. A at 159) (emphasis added)); and (4) an Appeal of Disciplinary Detention Form, designed to permit inmates to pursue appeals of disciplinary decisions. (Id.)

Defendants assert, and Plaintiff does not dispute, that Plaintiff failed to file Administrative Remedy Forms relating to his allegations as required by the Inmate Handbook. (Bruno Decl. ¶ 15; <u>see also</u> Compl. ¶¶ 468-94 (noting that Plaintiff filed Inmate Request Forms but failing to mention that he filed Administrative Remedy Forms.)) Further, Defendants argue that Plaintiff "did not file any grievance forms regarding any of the alleged searches, his transfer to detention, or any issues regarding cell ventilation." (Bruno Decl. ¶ 5.)

---

[4] Plaintiff's submissions make reference to an Inmate Remedy Form in addition to an Inmate Request Form. The Inmate Handbook and Defendants refer to an Administrative Remedy Form. The Court discerns that both parties appear to be referring to the same form. For the purposes of this Motion, the Court will treat them as the same and refer to the form by the appellation designated by the Inmate Handbook.

A review of the Inmate Request Forms submitted by Plaintiff reveals that they relate to his request for compensation for his administrative segregation and for back pay during the time he spent in 1 Left and was not permitted to work. (Pl.'s Opp'n, App. 8a, 9a.) Plaintiff's letter to the DOC Office of the Ombudsman, dated January 11, 2005, similarly seeks only back pay and work credits for the time that he did not work. (Pl.'s Opp'n, App. 11a.)

As Plaintiff does not appear to have filed any Inmate Request Forms seeking redress for the strip searches, he cannot be said to have exhausted all available administrative remedies regarding these claims. Thus, Counts 3, 4, 5, 7, and 13 must be dismissed.[5] See Booth v. Churner, 206 F.3d 289, 291 (3d Cir. 2002) (holding that 42 U.S.C. § 1997e(a) requires a prisoner to exhaust available administrative remedies before filing a § 1983 action).

The Court, however, declines to credit Defendants' arguments that Plaintiff has failed to exhaust his administrative remedies with respect to his claims of retaliation and denial of due process implicated by his administrative segregation and for back pay and work credits. Plaintiff filed an Inmate Request Form seeking compensation for his detention in 1 Left. While it is true that the grievance provisions of the Inmate Handbook make clear that the Inmate Request Form is only "the first step" to resolving issues within NJSP (Bruno Decl., Ex. A at 155), Plaintiff notes that he was told by his Housing Unit Officers that, due to a shortage, Administrative Remedy forms were not available for nearly five months following his confinement. (Pl.'s Decl. ¶¶ 5-7.) The Inmate Handbook specifically advises inmates to seek such forms from their Housing Unit Officers (Bruno Decl., Ex. A at 160.) Construing the allegations in the light most

---

[5] The Court recognizes that the strip searches comprise a portion of Plaintiff's retaliation claim, which is considered independently. The Court limits its dismissal of Plaintiff's claims that are based solely on the strip searches.

favorable to the Plaintiff, the Court finds that Plaintiff was in substantial compliance with the administrative remedy scheme to satisfy the exhaustion requirements of the PLRA, see <u>Nyhuis v. Reno</u>, 204 F.3d 65, 77-78 (3d Cir. 2000), or, alternatively, that his failure is excused by the shortage of Administrative Remedy Forms. <u>See</u> <u>Mitchell v. Horn</u>, 318 F.3d 523, 529 (3d Cir. 2003) (noting without holding that a prisoner's failure to exhaust administrative remedies may be excused by the prison's failure to provide grievance forms). Accordingly, the Court will examine whether these claims survive dismissal under Rule 12(b)(6).

## ANALYSIS

<u>A</u>.     <u>Retaliation</u>

In order to properly allege retaliation, a plaintiff must show that (1) he engaged in constitutionally-protected activity; (2) he suffered adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights" by prison officials; and (3) the protected activity was a substantial or motivating factor in the state actor's decision to impose disciplinary action. See <u>Rauser v. Horn</u>, 241 F.3d 330, 333 (3d Cir. 2001).

Plaintiff has alleged that Defendants retaliated against him for complaining about the poor air ventilation in his cell by filing an allegedly false disciplinary charge against him, subjecting him to multiple strip searches, and placing him in administrative segregation shortly after his initial complaint. While Defendants' alleged actions did not actually deter Plaintiff from seeking redress either through the prison's administrative scheme or through the instant action, the Court finds that these allegations, accepted as true for the purpose of resolving this Motion, suggest retaliation on the part of Defendants for Plaintiff's exercise of a First Amendment right. Thus, these allegations state a claim for retaliation and Counts 1, 2, and 6 of the Complaint will

survive dismissal.

B.     Due Process Claims

    1.     Disciplinary Detention

Plaintiff argues that his placement in administrative detention violated due process. A plaintiff establishes a due process violation by demonstrating that he was deprived of a protected liberty interest. Fraise v. Terhune, 283 F.3d 506, 522 (3d Cir. 2002). Liberty interests may arise either from the Due Process clause itself or from state-created entitlements. Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000). When the degree of confinement or conditions to which an inmate is subjected are within the sentence imposed and do not otherwise violate the Constitution, a prisoner's rights under the Due Process clause generally are not implicated. Fraise, 283 F.3d at 522. A prisoner's state-created liberty interest may be unconstitutionally deprived when his confinement "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Administrative segregation typically does not implicate either the Due Process clause or a state-created liberty interest. Torres v. Fauver, 292 F.3d 141, 150-52 (3d Cir. 2002). Here, Plaintiff was confined for 18 days, and he has failed to allege that the conditions of his confinement in 1 Left were significantly more restrictive than those of other similarly situated inmates. The Court finds that Plaintiff has not stated a cognizable claim for relief on this ground, and insofar as Count 12 is premised upon this claim, it is dismissed.

Similarly, Plaintiff's claim that the ICC's change in designation of his status to "emergency," which caused him to remain in administrative segregation for more than fifteen days, denied him of due process is without merit. Since Plaintiff was not deprived of a protected

liberty interest when he was placed in administrative segregation, he was owed no process in NJSP's decision to house him in 1 Left. <u>Mitchell</u>, 318 F.3d at 531. Accordingly, Count 11 is dismissed for failure to state a claim.

    2.    <u>Disciplinary Due Process</u>

Plaintiff alleges a number of deficiencies in the disciplinary hearing process that adjudicated his attempted escape charge, including the withholding of potentially exculpatory evidence, the submission of factually unsupported disciplinary reports to Hearing Officer Makarski, and denial of an opportunity to call witnesses, present documentary evidence, and confront and cross-examine witnesses.

In order to state a viable procedural due process claim, Plaintiff must allege that the procedures employed in his hearing fell short of the standard articulated by the Supreme Court for prison disciplinary hearings, which requires (1) written notice of the charges and a minimum of 24 hours to marshal the facts and prepare a defense to the charges; (2) a written statement by the fact-finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when . . . to do so will not be unduly hazardous to institutional safety or correctional goals." <u>Wolff v. McDonnell</u>, 418 U.S. 539, 563-66 (1974). Inmates do not have a constitutional right to confront and cross-examine witnesses during disciplinary proceedings. <u>Id.</u> at 567-68.

While Plaintiff cannot sustain a due process claim based on his inability to confront or cross-examine witnesses, he can proceed on his claims that he was denied the opportunity to call witnesses or present documentary evidence that could have demonstrated that he was not involved in the tunneling activity. Thus, the Court finds that Plaintiff has alleged sufficiently that

his disciplinary proceedings denied him due process and Plaintiff may proceed with Count 8.[6]

### 3. False Disciplinary Charges

Plaintiff alleges that Defendants falsely charged him with attempted escape as a means to retaliate against him for complaining about the air quality in his cell. The mere filing of a false disciplinary charge against a prisoner does not violate his constitutional rights so long as he is afforded a hearing where he can rebut the charge. See Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir. 1986). However, because Plaintiff has adequately alleged that the disciplinary proceedings adjudicating his guilt with respect to this charge denied him due process, Counts 1 and 8, which consist of his claims based on allegedly false disciplinary charges survive dismissal.

### 4. Back Pay

Plaintiff alleges that Defendants O'Gara's and Ricci's denial of his request for back pay during his period of disciplinary detention constitutes a deprivation of a constitutionally-protected liberty interest. In support of this contention, Plaintiff cites to the Inmate Handbook, which states that, "Inmates who are not able to work because of disciplinary action shall receive no pay or work credits. However, if an inmate is laid-in or otherwise prevented from work for disciplinary charges, and is found NOT GUILTY at the disciplinary hearing, he will be paid for the days on lay-in and given back the work credit." (Pl. Opp'n App. 26a.)

The Court finds that this provision creates a liberty interest in wages a prisoner would have otherwise earned had he not been confined in disciplinary detention. See Winsett v.

---

[6] The Court is mindful of the fact that Plaintiff was adjudged not guilty of the infraction. This outcome implicates the issue of damages sought by the Plaintiff. Accordingly, damages here may be nominal if Plaintiff ultimately prevails. See Carey v. Piphus, 435 U.S. 247, 266-67 (1978).

McGinnes, 617 F.2d 996, 1005 (3d Cir. 1980) (holding that prison regulations can create liberty interests to which due process rights attach). Therefore, Counts 9 and 12, insofar as they seek back pay, state a claim upon which relief may be granted.[7]

5. Work Credits

Plaintiff also seeks restoration of work credits he would have earned had he not been placed in disciplinary detention. Insofar as these work credits affect his release date, Plaintiff may not pursue this claim under an action brought under § 1983. See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) (holding that the appropriate action for a prisoner challenging the duration of his physical imprisonment to be a writ of habeas corpus). Accordingly, Counts 9 and 12 insofar as they seeks restoration of work credits are dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, and for good cause shown,

IT IS on this 20th day of September, 2007,

ORDERED that Defendants Hendricks, Washington, Wilson, Makarski, Ricci, and O'Gara's Motion to Dismiss Plaintiff's Complaint Pursuant To Fed. R. Civ. P. 12(b)(6) Or, In the Alternative, For Summary Judgment In Lieu of An Answer Pursuant to Fed. R. Civ. P. 56 [25] is GRANTED with respect to COUNTS 3, 4, 5, 7, 10, 11, 13; and it is further

ORDERED that Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant To Fed. R. Civ. P. 12(b)(6) Or, In the Alternative, For Summary Judgment In Lieu of An Answer Pursuant to Fed. R. Civ. P. 56 [25] is GRANTED with respect to COUNT 9 insofar as it seeks

---

[7] Count 10 of the Complaint is dismissed insofar as it is largely duplicative of the claim for back pay asserted in Count 9 against Defendants O'Gara and Ricci.

restoration of work credits; and it is further

ORDERED that Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant To Fed. R. Civ. P. 12(b)(6) Or, In the Alternative, For Summary Judgment In Lieu of An Answer Pursuant to Fed. R. Civ. P. 56 [25] is GRANTED with respect to COUNT 12 insofar as it seeks restoration of work credits and alleges a due process violation with respect to Plaintiff's disciplinary detention; and it is further

ORDERED that Plaintiff's claims for damages against Defendants in their official capacities are DISMISSED; and it is further

ORDERED that Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant To Fed. R. Civ. P. 12(b)(6) Or, In the Alternative, For Summary Judgment In Lieu of An Answer Pursuant to Fed. R. Civ. P. 56 [25] is DENIED with respect to COUNTS 1, 2, 6, 8; and it is further

ORDERED that Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant To Fed. R. Civ. P. 12(b)(6) Or, In the Alternative, For Summary Judgment In Lieu of An Answer Pursuant to Fed. R. Civ. P. 56 [25] is DENIED with respect to COUNT 9 insofar as it states a claim for back pay; and it is further

ORDERED that Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant To Fed. R. Civ. P. 12(b)(6) Or, In the Alternative, For Summary Judgment In Lieu of An Answer Pursuant to Fed. R. Civ. P. 56 [25] is DENIED with respect to COUNT 12 insofar as it states a claim for back pay.

       s/ Anne E. Thompson
       ANNE E. THOMPSON, U.S.D.J.